**JACKSONWHITE**

ATTORNEYS AT LAW

*A Professional Corporation*

40 North Center, Suite 200
Mesa, Arizona 85201
T: (480) 464-1111 F: (480) 464-5692
Attorneys for Plaintiff
Email: centraldocket@jacksonwhitelaw.com
By:　Michael R. Pruitt, No. 011792
　　　mpruitt@jacksonwhitelaw.com
　　　Nathaniel Hill, No. 028151
　　　nhill@jacksonwhitelaw.com

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| **Shelley Dusek;**<br><br>　　　Plaintiff,<br>vs.<br>**City of Coolidge, Arizona;**<br><br>　　　Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>**(Jury Trial Requested)** |

Plaintiff, Shelley Dusek, ("Ms. Dusek" or "Plaintiff"), by and through her counsel undersigned, and for her Complaint, alleges as follows:

### PARTIES AND JURISDICTION

1.　　Defendant, the City of Coolidge, Arizona (the "City" or "Coolidge") is a city organized and operating under the color of state law as a political subdivision of the State of Arizona.

2.　　Coolidge maintains and operates the Coolidge Police Department ("Coolidge PD" or the "Department") as its primary law enforcement agency.

3.　　Coolidge is the legally recognized employer of the individuals working in the Coolidge PD.

4.      Coolidge provides the compensation and controls the terms and conditions of employment of the individuals working in the Coolidge PD.

5.      At all times material hereto, Coolidge was acting through its agents, management and employees, and is therefore liable for their actions under the doctrine of respondeat superior.

6.      Ms. Dusek is a trained and certified law enforcement officer who began working as a patrol officer for Coolidge PD on or about December 11, 2017.

7.      Ms. Dusek successfully completed her probationary period and became a classified employee of Coolidge with all the rights and privileges inherent in holding such a position.

8.      As a public employee, Ms. Dusek had a property interest in her job and was covered by an extensive set of detailed policies and procedures related to among other things discipline, termination, medical and administrative leave, light duty assignments, and due process rights.

9.      As a certified law enforcement officer working for Coolidge PD, Ms. Dusek was covered by the Public Safety Personnel Retirement System ("PSPRS"), a state sponsored retirement and pension system.

10.     On or about September 9, 2020, the employment of Ms. Dusek was wrongfully terminated in violation of various federal statutes.

11.     At all times relevant to this action, Ms. Dusek resided within the jurisdiction of this Court.

12.     The events giving rise to these causes of action occurred within the jurisdiction of this court.

13.     Ms. Dusek complied with all statutory and administrative requirements and timely filed this lawsuit.

14.     This action arises under the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. ("ADA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

§2000e et seq. ("Title VII")  and violation of due process rights pursuant to 42 U.S.C. § 1983.

15.     At all times material, Ms. Dusek was a qualified individual and employee covered by the provisions and protections of the ADA, Title VII, and 42U.S.C. § 1983 which provide protections against discrimination, harassment, retaliation and violation of constitutionally protected rights.

16.     At all times material, Coolidge was the employer of Ms. Dusek and required to comply with the terms, conditions and protections of the ADA, Title VII and 42 U.S.C. § 1983.

17.     This Court has original jurisdiction over the federal statutory claims of Ms. Dusek.

18.     Jurisdiction and venue are proper for this Court.

**FACTUAL BASIS FOR CLAIMS FOR RELIEF**

19.     While working as a Coolidge PD patrol officer, Ms. Dusek performed the same duties and functions as the other similarly situated male officers. During her employment, Ms. Dusek and the other female Coolidge PD employees were subjected to inappropriate comments, frequent unwarranted criticism, differential treatment, gender discrimination and a generally hostile work environment based on their sex. This hostile work environment affecting the female officer and employees was well known and tolerated by the Coolidge PD chain of command and the management of the City government.

20.     On or about February 2, 2020, Ms. Dusek and a fellow officer stopped two teenage subjects. After one subject was found to be in possession of a gun, Ms. Dusek attempted to search the other subject. A struggle ensued and Ms. Dusek sustained a serious on-the-job hand and wrist injury. The second subject was determined to have a loaded firearm concealed in his clothing.

21.     After the teenage subject was taken into custody and transported to the station, Ms. Dusek was evaluated for a possible broken hand or wrist.

22.     It was determined that Ms. Dusek had suffered a serious wrist and hand injury. This injury constituted a serious medical condition under the FMLA and a disability under the ADA that interfered with one or more of her major life activities including performing manual tasks and performing her work and patrol duties.

23.     At various times following the February 2, 2020 incident, Ms. Dusek engaged in acts of protected activities such as exercising her rights under the Family and Medical Leave Act (FMLA) to take protected leave to care for her serious medical condition and requesting a reasonable accommodation under the ADA for a light duty assignment.

24.     Due to her wrist injury and serious medical condition, Ms. Dusek submitted FMLA paperwork to Coolidge on or about February 13, 2020 and was granted approved FMLA leave.

25.     On or about March 16, 2020, an orthopedic hand specialist determined that Ms. Dusek needed to undergo surgery on her wrist and the ulna bone in her forearm. Unfortunately, this surgery was delayed for approximately three months due to the start of the 2020 COVID pandemic.

26.     Ms. Dusek underwent counseling to deal with stress, anxiety and symptoms of PTSD related to her life-threatening altercation with the armed teenager. Later, these counseling sessions evolved to include the emotional distress caused by her treatment at work as described herein and subsequent involuntary termination on or about September 9, 2020.

27.     While waiting for her initial surgery, Ms. Dusek returned to work on light duty status on or about March 19, 2020. This light duty assignment allowed Ms. Dusek the reasonable accommodation of performing needed administrative tasks in support of Coolidge PD.

28.     On May 20, 2020, Ms. Dusek finally underwent ulnar shortening osteotomy surgery with metal plate and screw fixation of her wrist to stabilize the joint and promote healing.

29.     During a June 8, 2020 follow-up medical appointment, it was determined that the orthopedic hardware used in her surgery was faulty. Ms. Dusek underwent a second surgery on June 11, 2020 to replace the faulty hardware and perform a donor bone graph.

30.     On June 16, 2020, Ms. Dusek received a letter from Coolidge City Clerk, Norma Ortiz, informing her that her 12 weeks of approved FMLA leave would run out on June 22, 2020.

31.     The letter outlined three options available to Ms. Dusek: return to work by June 22, 2020 with a "full release" from her doctor; apply for administrative leave based on her medical condition; or resign. Ms. Dusek informed the City that she anticipated that her doctor would release her to return to a light duty assignment after a medical appointment on July 2, 2020.

32.     Coolidge placed Ms. Dusek on paid administrative leave and indicated it would review her employment status after her next doctor's visit.

33.     On July 13, 2020, Ms. Dusek returned to work on a 90-day light duty assignment.

34.     After returning to work, based on her disability and need for a reasonable accommodation, Ms. Dusek was made to feel unwelcomed, ostracized from her peers, removed from the common work area, and subjected to an ongoing pressure campaign pushing her to return to full-time, "full release" duty status.

35.     In contrast, a similarly situated male patrol officer was not subjected to such negative treatment while on medical leave and light duty status.

36.     Officers on light duty assignments, such as Ms. Dusek, are not required to comply with the official dress code that applied to on-duty officers. While on light duty status, Ms. Dusek was given an unfounded day book entry write-up by Sgt. Williams for an alleged dress code violation. While the write-up was later rescinded as unfounded, this day book entry was discriminatory in nature and improperly given Ms. Dusek based on her gender and disability.

37.     On August 11, 2020, Ms. Dusek sent a letter to Coolidge City Manager, Rick Miller, requesting a second 90 day light duty work assignment.

38.     On August 12, 2020, Ms. Dusek was informed by Coolidge Police Chief Grizzle that City Manager Miller had already determined that he was "80-90% certain" that he would not extend Ms. Dusek's light duty assignment.

39.     Without inquiring into the medical prognosis of Ms. Dusek or the anticipated date she could return to full duty, City Manager Miller informed Ms. Dusek in a letter dated August 14, 2020 that her request for a 90 day extension of her light duty assignment was denied as it was not in the best interests of the City. The letter went on to state that Ms. Dusek needed to inform the Department whether she would be able to return to work with a "full release" on or before August 20, 2020. The letter did not specifically ask for an anticipated date of her return to work.

40.     The letter from City Manager Miller also failed to mention potential options such as extended medical leave under Section 4-8-2 Administrative Leave for Medical Purposes in the City of Coolidge Personnel Policies and Procedures Handbook. This policy states it is intended to provide a medical leave option to those employees "who have exhausted the FMLA leave period."

41.     Ms. Dusek provided Coolidge with a letter from her doctor that indicated she was receiving ongoing medical treatment for her wrist injury and was not ready to return to unrestricted work duties at this time.

42.     On August 24, 2020, Ms. Dusek received a Notice of Intent to take Disciplinary Action ("Notice of Disciplinary Action") that stated, "Cause for Disciplinary Action: Expiration of Approved Leave" and "Proposed Action to be taken: Termination." The notice references "the current diminished staffing levels of the Coolidge Police Department" as the rationale for why the "City of Coolidge cannot leave the position vacant any longer."  At this time, Coolidge PD had several other open positions that could have been filled to increase staffing levels without terminating Ms. Dusek.

43.     Despite not having requested an anticipated date of return to work, the Notice of Disciplinary Action claimed City Manager Miller denied the request for light duty extension due to lack of an anticipated return date. The Notice of Disciplinary Action finishes by stating, "the City of Coolidge **must** terminate your employment with the City of Coolidge." [Emphasis added.]

44.     Despite the clear intent to terminate the employment of Ms. Dusek, she was informed that she could "provide your response and give cause why your termination should not occur" by providing a written response to Chief Grizzle by August 26, 2020 on or before 17:00 hours (5 p.m.).

45.     That same day, August 24, 2020, Ms. Dusek was presented with a memorandum from Chief Grizzle that informed her she was being placed on [non-medical] administrative leave with pay "until further notice" and directed to remain at her home during her assigned shift through "the conclusion of your time to respond to the 'Notice of intent to terminate your employment[.]'" On information and belief, Chief Grizzle used this wording "intent to terminate" because he knew the decision to terminate the employment of Ms. Dusek had already been made and her August 26, 2020 response was irrelevant and futile.

46.     Ms. Dusek submitted a response to Chief Grizzle on August 26, 2020. The response discussed her need to recover from an on-the-job injury and the City's documented history of providing time for proper recovery and rehabilitation to other injured officers. Ms. Dusek added she had an appointment with her doctor on August 31, 2020 and anticipated this would allow her to provide a timeframe for her return to full duties.

47.     On or about August 28, 2020, Ms. Dusek received an email from the City HR Department with a blank Medical Inquiry Form in Response to an Accommodation Request ("Accommodation Request Form"). Ms. Dusek sent the Accommodation Request Form to her orthopedic hand specialist who indicated Ms. Dusek had a physical impairment that limited a major life activity. The doctor wrote in the space for

"suggestions regarding possible accommodations to improve job performance, including a leave of absence" that "if desk work is unavailable then LOA [leave of absence] to recover from surgery and allow bone to heal." While the anticipated duration of the impairment was "unclear," it was "> 3 months," i.e., greater than 3 months. The form went on to state that the Ms. Dusek was "very anxious & stressed regarding uncertainty [with] her position & career and employment status."

48.     The completed Accommodation Request Form was returned to the City HR Department on or about September 4, 2020.

49.     Despite receiving a formal request for a reasonable accommodation, the City never engaged in the interactive process with Ms. Dusek to explore accommodation and assignment options. The failure to engage in the interactive process violated the ADA.

50.     Potential reasonable accommodations would have included such things as approving the request for another 90 day light duty assignment or informing Ms. Dusek of the option of taking administrative leave due to a medical condition pursuant to Section 4-8-2 Administrative Leave for Medical Purposes in the City of Coolidge Personnel Policies and Procedures Handbook.

51.     Having provided her response to Coolidge PD and unsure of her status, Ms. Dusek returned to work at the office on September 8, 2020.

52.     On September 9, 2020, a Notice of Termination signed by City Manager Miller was hand delivered to Ms. Dusek. The notice informed Ms. Dusek that her employment was terminated effective immediately.

53.     The Notice of Termination claimed the City was concerned about "staffing shortages due to a number of factors including, resignations, retirements, extended medical leave and much needed vacation requests to name a few." The Notice of Termination did not address how the termination of Ms. Dusek would alleviate, and not exacerbate, existing staffing issues involving multiple existing open positions.

54.     The City, its management, Coolidge HR and the Notice of Termination failed to inform Ms. Dusek of her post termination due process rights including the fact

that Ms. Dusek had ten business days to appeal her termination to the City's Personnel Advisory Board.

55. Another violation of Ms. Dusek's due process rights and Coolidge personnel policies and procedures involved the failure to provide Ms. Dusek with a legitimate pre-action meeting, also known as a *Loudermill* hearing, giving her the opportunity to respond to the allegations prior to any discipline or termination.

56. The August 24, 2020 invitation to provide a response and give cause for why the termination should not occur was clearly pretextual. The decision to terminate the employment of Ms. Dusek had already been made prior to her opportunity to respond.

57. The Notice of Intent to Discipline stated the City "must" terminate the employment of Ms. Dusek. Also, the August 24, 2020 memorandum from Chief Grizzle informing Ms. Dusek that she was being placed on administrative leave described the notice provided to Ms. Dusek that same day as a "Notice of intent to terminate." Finally, despite several references to "current diminished staffing levels" and "staffing shortages," the City decided to terminate the employment of Ms. Dusek instead of hiring to fill multiple open positions.

58. The decision to terminate Ms. Dusek was made on or before August 24, 2020, i.e., two days **before** the deadline for Ms. Dusek to provide her response to the Notice of Intent to Discipline. The Personnel Action Form signed by City Manager Miller on August 24, 2020 indicated approval of the termination of the employment of Ms. Dusek effective September 9, 2020. City Manager Miller is the final decision maker as it was his signature on the Notice of Termination.

59. At no point during the events outlined herein, did the City, its management, or Coolidge HR explore other viable options for Ms. Dusek such as disability retirement, additional administrative leave, medical leave, alternative work assignments, approving a second 90-day light duty assignment or other provisions available under the policies and procedures of the City.

60.     The treatment of Ms. Dusek stands in stark contrast to the City's treatment of a similarly situated male patrol officer who was allowed to remain on a combination of medical leave and light duty for 10 months, approximately 300 days, before returning to full duty in May 2020. By contrast, Ms. Dusek was only given a combination of about seven months of medical leave and light duty status before she was fired.

61.     In a further example of preferential treatment, this male officer was allowed to remain stationed in the main patrol area of headquarters while on light duty where he could be seen playing video games on his phone. He was given preferential treatment despite a medical condition that many patrol officers expressed skepticism about. This stands in sharp contrast to the circumstances of Ms. Dusek who sustained a serious on-the-job injury while protecting the public and then terminated after only one light duty assignment and never approved for a second 90-day light duty assignment, placed on administrative leave for medical purposes or given the opportunity to explore the option for a disability retirement.

62.     As the direct and proximate result of Defendants' actions, Ms. Dusek suffered severe emotional distress, nervous breakdown, fear, anxiety, humiliation, social isolation, and insomnia to such an extent that she suffered mental and physical harm.

63.     As a result of the termination of her employment, Ms. Dusek has suffered significant economic harm through lost past and future income, lost benefits and reduced retirement benefits.

### COUNT I - ADA

64.     All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

65.     The ADA prohibits employment related discrimination, a hostile work environment and retaliation.

66.     Ms. Dusek had a recognized disability that interfered with one or more of her major life activities including performing manual tasks and her work and patrol duties.

67.     Due to her disability, Ms. Dusek requested leave, light duty, and a reasonable accommodation.

68.     Despite receiving a formal request for a reasonable accommodation, the City failed to engage in the interactive process, failed to provide a reasonable accommodation and shortly thereafter terminated Ms. Dusek.

69.     The events and actions described herein violated the ADA by illegal discrimination, a hostile work environment, retaliation and termination due to the recognized disability of Ms. Dusek.

70.     The effect of these unlawful employment practices has been to classify, limit, and discriminate against Ms. Dusek in a manner that deprived her of employment opportunities and adversely affected her status as an employee due to her disability.

71.     As a result of the illegal actions of the City, Ms. Dusek has been and will continue to be deprived of income in the form of past, present, and future wages, prospective retirement benefits, seniority, insurance coverage, and other monetary and non-monetary benefits.

72.     The actions of the City and its employees and agents were committed maliciously and with a reckless indifference to the economic harm, pain and suffering, and emotion distress it caused Ms. Dusek allowing her to recover all damages permitted under law in an amount to be proven at trial.

73.     Ms. Dusek is entitled to back pay, reinstatement or front pay, compensatory damages and her reasonable attorneys' fees and costs.

**COUNT II – Title VII**

74.     All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

75.     Title VII prohibits employment related discrimination and a hostile work environment due to sex.

76.     As described herein, Ms. Dusek was subjected to sex discrimination and a hostile work environment due to her sex.

77.     The City discriminated against Ms. Dusek on the basis of her sex, female, in violation Title VII by engaging in, tolerating, or failing to prevent sex  discrimination and a hostile work environment.

78.     Upon information and belief, members of City management and Coolidge PD chain of command were aware of or should have known of the acts of sexual discrimination and hostile work environment directed at Ms. Dusek but did nothing to stop the illegal discrimination or alleviate her hostile work environment.

79.     The effect of this unlawful sex discrimination has been to classify, limit, and discriminate against Ms. Dusek in a way that jeopardizes and tends to deprive her of employment opportunities and negatively impacted her employment status because of her gender in violation of Title VII of the Civil Rights Act of 1964, as amended.

80.     As a victim of the unlawful discrimination and employment practices described herein, Ms. Dusek has suffered humiliation, degradation, and emotional distress due to her sex. Ms. Dusek has also lost income in the form of past, present, and future wages, medical insurance, benefits, and reduced retirement benefits.

81.     Ms. Dusek is entitled to recover all relief as authorized under Title VII including her economic loss in an amount to be proved at trial and her reasonable attorneys' fees and costs.

## COUNT III - 42 U.S.C. § 1983

82.     All previous paragraphs of this Complaint are realleged as if set forth more fully herein.

83.     Federal statute 42 U.S.C. § 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

84.     As described herein, the City of Coolidge acted under the color of state law to deprive Ms. Dusek of her constitutional protected due process rights.

85.     As described herein, Ms. Dusek has been deprived of her property interest in her job without due process in violation of the Fourteenth Amendment of the Constitution of the United States.

86.     As described herein, the actions of the City, such as the flawed disciplinary process, the lack of a legitimate pre-termination hearing, actions designed to deprive Ms. Dusek of the opportunity for post termination due process, and wrongful termination, constitute violations of the procedural due process provisions of the Fourteenth Amendment of the Constitution of the United States.

87.     Ms. Dusek has suffered humiliation and degradation, pain and suffering and economic loss due to Defendant's unconstitutional practices.

88.     As described herein, the actions of the City violated the due process rights of Ms. Dusek and she is entitled to all rights, remedies, in law or in equity, available to her under 42 U.S.C. § 1983.

89.     Ms. Dusek is also entitled to recover her reasonable attorneys' fees and costs.

**WHEREFORE,** Ms. Dusek respectfully requests judgment in her favor and against the City and that the Court declare as follows:

A. That the employment practices and actions described herein are unlawful and violate the ADA, Title VII and 42 U.S.C. § 1983;

B. Award Ms. Dusek any and all relief and recovery available to her under the ADA, Title VII and 42 U.S.C. § 1983;

C. Award all lost past and future income, lost benefits, diminished retirement benefits, medical bills, and all other economic damages in an amount to be determined at trial;

D.  Award all compensatory damages to which Ms. Dusek is entitled including but not limited to, pain and suffering, mental anguish, loss of earning capacity in an amount to be proven at trial;

E.  Award Ms. Dusek all non-monetary relief available to her under the ADA, Title VII or other statute, including prospective injunctive and equitable relief. This would include, but not be limited to, reinstatement, future employment benefits, enforcement and ongoing compliance with the provisions of the ADA and Title VII and her reasonable attorneys' fees and costs;

F.  Award prejudgment interest from the date each claim for damages was liquidated;

G.  Award interest on all sums awarded in judgment at the highest legal rate allowable from the date of judgment until paid;

H.  That this Court retain jurisdiction over this action to ensure full compliance with the Court's orders and require the City file such reports as the Court deems necessary to evaluate such compliance; and

I.  For such other and further relief as this Court deems just and proper under the circumstances.

**DATED** this 18th day of January, 2022.

**JACKSON WHITE**

 s/ Michael R. Pruitt
By: Michael R. Pruitt, No. 011792
Nathaniel Hill, No. 028151
40 North Center Street, Suite 200
Mesa, Arizona 85201
Attorneys for Plaintiff